THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>PRECISION DOSE INC, TAGI PHARMA INC., and SASB CORP d/b/a OKEECHOBEE DISCOUNT DRUGS<br><br>Defendants. | Case No. 3:25-cv-50410 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY (collectively, "Hartford"), by and through their attorneys, Michael J. Duffy, Michael J. O'Malley, and Joanna C. Kocol of Wilson Elser Moskowitz Edelman & Dicker LLP, bring this Complaint for Declaratory Judgment against defendants PRECISION DOSE INC. ("Precision"), TAGI PHARMA INC. ("Tagi", and with Precision, the "Precision Defendants"), and SASB Corp. d/b/a Okeechobee Discount Drugs ("Underlying Plaintiff") and state as follows:

### STATEMENT OF THE CASE

1. This action seeks a declaration, pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), that Hartford owes no insurance coverage obligations to the Precision Defendants for the claims raised in the class-action lawsuit styled: *SASB Corp dba Okeechobee Discount Drugs, individually and as the representative of a class of similarly situated persons and entities v. Precision Dose Inc and Tagi Pharma Inc.* Case Number 2024-LA-0000329, pending in the

1

Circuit Court of Winnebago County, Illinois (the "Underlying Action"). A copy of the Class Action Complaint filed in the Underlying Action is attached as "**Exhibit A**".

## PARTIES

2. Plaintiffs Hartford Fire Insurance Company and Hartford Casualty Insurance Company are both insurance companies incorporated under the laws of the State of Connecticut with their principal place of business in Hartford, Connecticut.

3. Precision is an Illinois corporation with its principal place of business in South Beloit, Illinois.

4. Tagi is an Illinois corporation with its principal place of business in South Beloit, Illinois and is a wholly owned subsidiary of Precision.

5. Underlying Plaintiff is a Florida corporation with its principal place of business in Okeechobee, Florida.

6. Underlying Plaintiff is named herein as a nominal defendant because it is the plaintiff in the Underlying Action and has a potential interest in this litigation. No relief is sought against the Underlying Plaintiff.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and the parties are citizens of different states.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the Precision Defendants' principal place of business is in this District, the relevant insurance policies were issued in this District, and the Underlying Action is pending in this District.

## FACTS

A. **THE UNDERLYING ACTION**

9. On November 12, 2024, Underlying Plaintiff commenced the Underlying Action against the Precision Defendants. *See* Ex. A.

10. The Underlying Action alleges that the Precision Defendants sent unsolicited advertisements via fax, violating the Telephone Consumer Protection Act (TCPA) 47 U.S.C. § 227. *See* Ex. A.

11. Underlying Plaintiff alleges it received an unsolicited advertisement on its telephone facsimile ("fax") machine from Precision on or about July 8, 2024. Ex. A, ¶ 3.

12. The fax allegedly advertised the commercial availability or quality of Precision's property, goods, or services. Ex. A, ¶ 4.

13. Underlying Plaintiff claims that these faxes were sent without prior express permission and lacked the required opt-out notice. Ex. A, ¶¶ 5-8.

14. The TCPA prohibits sending "unsolicited advertisements" by fax. 47 U.S.C. § 227 (b)(1)(C).

15. Underlying Plaintiff seeks $500 in statutory damages for each violation of the TCPA and trebled damages of up to $1,500 if the violations were knowing or willful. Ex. A, ¶ 9, ¶ 55.

16. Underlying Plaintiff also seeks class action status for all similarly affected individuals and entities who were sent one or more such faxes on or after November 11, 2019. Ex. A, ¶ 35, ¶ 36.

17. In Count I, Underlying Plaintiff seeks statutory damages and other relief for each of the Precision Defendants' violations of the TCPA occurring within the four years before the action was commenced and continuing until the Court directs notice to the class. Ex. A, ¶ 52.

18. In Count II, Underlying Plaintiff asserts a cause of action for conversion. Ex. A, ¶ 71.

19. Underlying Plaintiff alleges that by sending the unsolicited faxes, the Precision Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Ex. A, ¶ 76.

20. Underlying Plaintiffs further allege each class member suffered damages because of their receipt of unsolicited fax advertisements from the Precision Defendants. Ex. A, ¶ 77.

B. *The Policies*

21. Hartford issued certain Commercial General Liability Policies to the Precision Defendants, which were effective June 22, 2005 to June 22, 2006, June 22, 2006 to June 22, 2007, and June 22, 2007 to June 22, 2008.

22. Hartford did not renew coverage with the Precision Defendants for the period June 22, 2008 to June 22, 2009. Notably, the June 22, 2008 to June 22, 2009 (the "Policy") policy was cancelled flat at the insured's request on July 15, 2008.

23. Hartford issued new Commercial General Liability Policies to the Precision Defendants beginning June 22, 2009, with effective dates of June 22, 2009 to June 22, 2010 (the "2009-10 CGL Policy"). A copy of the 2009-10 CGL Policy is attached as "**Exhibit B**."

24. The 2009-10 Commercial General Liability Policy is not a renewal of any Policy.

25. The 2009-10 Commercial General Liability Policy includes an exclusion that barred coverage for "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate the TCPA. *See* Ex. B.

26. Hartford renewed Commercial General Liability coverage with the Precision Defendants in the following years and each renewal policy contained a TCPA exclusion.

27. Hartford issued Umbrella Liability Policies to the Precision Defendants beginning April 1, 2011, with effective dates of April 1, 2011 to June 22, 2011 (the "2011 Umbrella Policy"). A copy of the 2011 Umbrella Policy is attached as "**Exhibit C**."

28. The 2011 Umbrella Policy is not a renewal of the June 22, 2008 to June 22, 2009 Policy.

29. The 2011 Umbrella Policy includes an exclusion that barred coverage for any injury, damage, loss, cost or expense, including but not limited to "personal and advertising injury", arising directly or indirectly out of any action or omission that violates or is alleged to violate the TCPA. *See* Ex. C.

30. Hartford renewed Umbrella Liability coverage with the Precision Defendants in the following years and each renewal policy contained a TCPA exclusion.

31. Relevant here is that Hartford issued certain Commercial General Liability Policies to the Precision Defendants bearing policy number 46 UEN KL8030, with effective periods of June 22, 2019 to June 22, 2020 (the "2019-20 CGL Policy"), June 22, 2020 to June 22, 2021 (the "2020-21 CGL Policy"), June 22, 2021 to June 22, 2022 (the "2021-22 CGL Policy") and June 22, 2022 to June 22, 2023 (the "2022-23 CGL Policy"). Hartford also issued Commercial General Liability Policies to the Precision Defendants bearing policy number 46 UEN AV4PS4, with effective dates of June 22, 2023 to June 22, 2024 (the "2023-24 CGL Policy") and June 22, 2024 to June 22, 2025 (the "2024-25 CGL Policy").

32. Policies 46 UEN KL8030 and 46 UEN AV4PS4 will be collectively referred to as the "Commercial General Liability Coverage" or the "CGL Policies."

33. A true and correct copy of the 2019-20 CGL Policy is attached as "**Exhibit D**."

34. A true and correct copy of the 2020-21 CGL Policy is attached as "**Exhibit E**."

35. A true and correct copy of the 2021-22 CGL Policy is attached as "**Exhibit F**."

36. A true and correct copy of the 2022-23 CGL Policy is attached as "**Exhibit G**."

37. A true and correct copy of the 2023-24 CGL Policy is attached as "**Exhibit H**."

38. A true and correct copy of the 2024-25 CGL Policy is attached as "**Exhibit I**."

39. Hartford also issued policies to the Precision Defendants, which, subject to their terms, provide certain Umbrella Liability Coverage under policy number 46 RHU PG6389 with effective dates of June 22, 2019 to June 22, 2020 (the "2019-20 Umbrella Policy"), June 22, 2020 to June 22, 2021 (the "2020-21 Umbrella Policy"), June 22, 2021 to June 22, 2022 (the "2021-22 Umbrella Policy") and June 22, 2022 to June 22, 2023 (the "2022-23 Umbrella Policy"). Hartford also issued Umbrella Liability Policies to the Precision Defendants bearing policy number policy 46 RHU AW4PX9 with effective dates of June 22, 2023 to June 22, 2024 (the "2023-24 Umbrella Policy") and June 22, 2024 to June 22, 2025 (the "2024-25 Umbrella Policy").

40. Policies 46 RHU PG6389 and 46RHU AW4PX9 will be collectively referred to as the "Umbrella Liability Coverage" or the "Umbrella Policies."

41. A true and correct copy of the 2019-20 Umbrella Policy is attached as "**Exhibit J**."

42. A true and correct copy of the 2020-21 Umbrella Policy is attached as "**Exhibit K**."

43. A true and correct copy of the 2021-22 Umbrella Policy is attached as "**Exhibit L**."

44. A true and correct copy of the 2022-23 Umbrella Policy is attached as "**Exhibit M**."

45. A true and correct copy of the 2023-24 Umbrella Policy is attached as "**Exhibit N**."

46. A true and correct copy of the 2024-25 Umbrella Policy is attached as "**Exhibit O**."

47. Collectively, the CGL Policies and the Umbrella Policies will be referred to as the "Policies".

*i.* **<u>The CGL Policies</u>**

48. The CGL Policies[1] state, in part:

*SECTION I – COVERAGES*

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

    *1.*     **Insuring Agreement**

        *a.*   *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

          *(1)*   *The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*
          *(2)*   *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

    *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*

*COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY*

    *1.*     **Insuring Agreement**

        *a.*   *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:*

---

[1] Commercial General Liability Coverage is provided pursuant to COMMERCIAL GENERAL LIABILITY COVERAGE FORM HG 00 01 09 16, as modified in relevant part by DISCRIMINATION - AMENDMENT OF PERSONAL AND ADVERTISING INJURY DEFINITION HC 30 06 09 16.

> > *(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*
> > *(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*
> > *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*
>
> > **b.** *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

See Exs. D-I.

49. The CGL Policies provide the following definitions:

> **5.** *"Bodily injury" means physical:*
> *a. Injury;*
> *b. Sickness; or*
> *c. Disease*
> *sustained by a person and, if arising out of the above, mental anguish or death at any time.*

*\*\*\**

> **16.** *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*\*\*\**

> **17.** *"Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:*
> *a. False arrest, detention or imprisonment;*
> *b. Malicious prosecution;*
> *c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;*
> *d. Oral, written or electronic publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*
> *e. Oral, written or electronic publication, in any manner, of material that violates a person's right of privacy;*

8

   *f.*  *Copying, in your "advertisement" a person's or organization's "advertising idea" or style of "advertisement";*
   *g.*  *Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" [.]*
   *h.*  *Discrimination that results in humiliation or other injury to the feelings or reputation of a natural person, provided that such discrimination is not committed by or at your direction, or the direction of any partner, member, manager, "executive officer", director, stockholder or trustee of the insured.*[2]

***

  **19.**  **"Property damage"** *means:*
   *a.*  *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
   *b.*  *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
 *As used in this definition, computerized or electronically stored data, programs or software are not tangible property. Electronic data means information, facts or programs:*
   *a.*  *Stored as or on;*
   *b.*  *Created or used on; or*
   *c.*  *Transmitted to or from;*
 *computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cell, data processing devices or any other media which are used with electronically controlled equipment.*

***

  **21.**  **"Suit"** *means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. Suit includes:*
   *a.*  *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*
   *b.*  *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

*See* Exs. D-I.

  50.  The CGL Policies also contain the following exclusions:

---

[2] As modified by HC 30 06 09 16.

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

\*\*\*

2. *Exclusions*
   *This insurance does not apply to:*

   a. *Expected or Intended Injury*
      *"Bodily injury or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.*

\*\*\*

*COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY*

\*\*\*

2. *Exclusions*
   *This insurance does not apply to:*

   a. *Knowing Violation Of Rights Of Another*
      *"Personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".*

\*\*\*

   c. *Material Published Prior To Policy Period*
      *"Personal and advertising injury" arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the policy period.*

\*\*\*

   q. *Right Of Privacy Created By Statute*
      *"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.*

      *However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.*

\*\*\*

   t. *Recording And Distribution Of Material Or Information*

10

> ***In Violation Of Law***
> *"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*
> *(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*
> *(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;*
> *(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or*
> *(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

*See* Exs. D-I.

### ii. The Umbrella Policies

51. Subject to their terms, the Umbrella Policies[3] provide certain Umbrella Liability Coverage and state as follows, in part:

> *SECTION I - COVERAGES*
> *INSURING AGREEMENTS*
>
> ***A.    Umbrella Liability Insurance***
> *1.    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in **Section IV – LIMITS OF INSURANCE.***
> *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II - INVESTIGATION, DEFENSE, SETTLEMENT.***
>
> *2.    This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:*
> *a.    The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"[...]*

*See* Exs. J-O.

---

[3] Umbrella Liability Coverage is provided pursuant to UMBRELLA LIABILITY POLICY PROVISIONS XL 00 03 09 16.

11

52. The Umbrella Policies contain the following definitions, quoted in part as follows:

**SECTION VII – DEFINITIONS**

*Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.*

**"Accident"** *includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".*

**"Damages"** *include prejudgment interest awarded against the "insured" on that part of the judgment we pay.*

*"Damages" do not include:*
1. *Fines;*
2. *Penalties; or*
3. *Damages for which insurance is prohibited by the law applicable to the construction of this policy.*

*Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:*
1. *Death;*
2. *Mental anguish;*
3. *Shock;*
4. *Disability; or*
5. *Care and loss of services or consortium.*

**"Occurrence"** *means*
1. *With respect to "bodily injury" or "property damage": an accident, including continuous repeated exposure to substantially the same general harmful conditions, and*
2. *With respect to "personal and advertising injury": an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".*

**"Self-insured retention"** *means the amount stated as such in the Declarations which is retained and payable by the "insured" with respect to each "occurrence".*

**"Underlying insurance"** *means the insurance policies listed in the Schedule of Underlying Insurance Policies...*

*See* Exs. J-O.

53. The Umbrella Policies contain the following exclusions, in part:

**B.     Exclusions**

*This policy does not apply to:*

**4.    *Personal and Advertising Injury***

*This policy does not apply to "personal and advertising injury". **EXCEPTION***

*This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply.*

*Any coverage restored by this **EXCEPTION** applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies*

\*\*\*

**14.    *Expected Or Intended***
*"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.*
*This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.*

\*\*\*

**24.    *Recording And Distribution Of Material Or Information In Violation Of Law***
*Any injury, damage, loss, cost or expense, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:*
a.    *The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;*
b.    *The CAN-SPAM Act of 2003, including any amendment of or addition to such law;*
c.    *The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or*
d.    *Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.*

*See* Exs. J-O.

### C. *Actual Controversy*

54. Hartford denies that it owes the Precision Defendants any defense or indemnity obligations under the Policies.

55. An actual and justiciable controversy exists between Hartford on the one hand, and the Precision Defendants and the Underlying Plaintiff on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## COUNT I
## No "Bodily Injury" or "Property Damage" Caused By An "Occurrence"
### *(All Policies)*

56. Hartford incorporates and restates the allegations of Paragraphs 1 through 55 above as if fully set forth herein.

57. Subject to their terms, the Policies provide coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies.

58. The claims in the Underlying Action do not allege damages because of "bodily injury" or "property damage" caused by an "occurrence."

59. Accordingly, Hartford does not owe any defense or indemnity obligations to Precision Defendants for the claims in the Underlying Action.

**COUNT II**
**Exclusion B.2.t. (CGL Policies) and Exclusion B.24. (Umbrella Policies) – Recording and Distribution of Material or Information in Violation of Law Exclusion**
*(All Policies)*

60. Hartford incorporates and restates the allegations of Paragraphs 1 through 59 above as if fully set forth herein.

61. The CGL Policies, at Exclusion **B.2.t**., bar coverage for "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law…."

62. The Umbrella Policies, at Exclusion **B.24**., exclude coverage for "bodily injury", "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law…."

63. All the claims in the Underlying Action arise out of allegations that the Precision Defendants sent unsolicited advertisements via fax, violating the Telephone Consumer Protection Act (TCPA).

64. To the extent "bodily injury", "property damage" or "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, the Recording and Distribution of Material or Information in Violation of Law Exclusion bars coverage.

65. Accordingly, Hartford has no duty to defend or indemnify Precision Defendants for the claims in the Underlying Action.

**COUNT III**
**Exclusion B.2.q.– Violation of a Person's Right of Privacy**
**Created by any State or Federal Act**
*(CGL Policies)*

66. Hartford incorporates and restates the allegations of Paragraphs 1 through 65 above as if fully set forth herein.

67. The CGL Policies, at Exclusion **B.2.q**., exclude coverage for any "personal and advertising injury" "[a]rising out of the violation of a person's right of privacy created by any state or federal act."

68. The TCPA is a federal act that creates a person's right of privacy by restricting telephone solicitations and the use of automated telephone equipment.

69. The Underlying Action is a class action complaint for violations of the TCPA for allegedly sending unsolicited fax advertisements.

70. To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this exclusion bars coverage for the claims against the Precision Defendants in Underlying Action.

71. Accordingly, Hartford has no duty to defend or indemnify Precision Defendants for the claims in the Underlying Action.

**COUNT IV**
**Exclusion B. 4. – "Personal and Advertising Injury" Exclusion**
*(Umbrella Policies)*

72. Hartford incorporates and restates the allegations of Paragraphs 1 through 71 above as if fully set forth herein.

73. The Umbrella Policies, at Exclusion **B.4.**, bar coverage for "personal and advertising injury".

74. The exception to Exclusion **B.4.** is not applicable to this coverage dispute because, as explained above, no "personal and advertising injury" coverage is afforded for the Underlying Action under the CGL Policies.

75. As such, no "personal and advertising injury" coverage is afforded under the Umbrella Policies.

76. Accordingly, Hartford has no duty to defend or indemnify Precision Defendants for the claims in the Underlying Action.

## COUNT V
## Expected or Intended and Knowing Violation of Rights of Another Exclusions
### *(All Policies)*

77. Hartford incorporates and restates the allegations of Paragraphs 1 through 76 above as if fully set forth herein.

78. **Exclusion B.2.a.** in the CGL Policies bars coverage for "[b]odily injury or "property damage" expected or intended from the standpoint of the insured.

79. **Exclusion B.14** in the Umbrella Policies excludes coverage for "[b]odily injury" or "property damage" expected or intended from the standpoint of the insured.

80. To the extent that the Underlying Action alleges "[b]odily injury or "property damage", which Hartford denies, **Exclusion B.2.a.** in the GCL Policies and **Exclusion B.14.** in the Umbrella Policies bar coverage for such damages that were expected or intended from the standpoint of the Precision Defendants under the Policies.

81. Additionally, **Exclusion B.2.a Knowing Violation of Rights of Another**, under Coverage B, bars coverage for "personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

17

82. The Underlying Action alleges the Precision Defendants knew or should have known that their conduct would cause the damages alleged.

83. Accordingly, these exclusions bar coverage for the Underlying Action.

## COUNT VI
### The Underlying Action Seeks Relief that Does Not Constitute Damages
*(All Policies)*

84. Hartford incorporates and restates the allegations of Paragraphs 1 through 83 above as if fully set forth herein.

85. The Underlying Action seeks fines, penalties, punitive damages, and injunctive relief.

86. Subject to their term, the CGL Policies provide coverage for "sums that the insured becomes legally obligated to pay . . ."

87. The Umbrella Policies state the term "damages" do not include fines, penalties, or damages for which insurance is prohibited by law.

88. Injunctive relief does not constitute sums or damages.

89. Punitive damages are uninsurable under Illinois law.

90. As such, any claims seeking fines, penalties, punitive damages, or injunctive relief are not covered under the Policies and Hartford owes no such coverage to the Precision Defendants.

## COUNT VII
## Outside Policy Periods and Material Published Prior to Policy Period Exclusion
### *(All Policies)*

91. Hartford incorporates and restates the allegations of Paragraphs 1 through 90 above as if fully set forth herein.

92. The Policies state that this insurance only applies to "personal and advertising injury" caused by an offense that was committed during the "policy period."

93. Moreover, **Exclusion B.2.c.** in the CGL Policies bars coverage for "personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

94. Accordingly, Hartford has no duty to defend or indemnify Precision Defendants for the claims in the Underlying Action to the extent that such offense did not occur during that given policy period or began prior to that policy period.

**WHEREFORE**, Hartford prays this Court enter the following relief:

A. A declaration finding Hartford owes no coverage obligations to the Precision Defendants for the claims against them in the Underlying Action under the Policies; and

B. For all such just and equitable relief, including costs of this suit.

Respectfully Submitted,

By: /s/ *Michael J. O'Malley*
    Attorney for HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY

Michael J. Duffy
Michael J. O'Malley
Joanna C. Kocol
Wilson Elser Moskowitz Edelman & Dicker LLP
161 N Clark - Suite 4500
Chicago, Illinois 60601
(312) 704-0550
Michael.Duffy@wilsonelser.com
Michael.O'Malley@wilsonelser.com
Joanna.Kocol@wilsonelser.com